O

# United States District Court
# Central District of California

| | |
|---|---|
| C.R.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PLB MANAGEMENT, LLC et al.,<br><br>　　　　　Defendants. | Case № 2:21-cv-03275-ODW (JEMx)<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [64]** |

## I.  INTRODUCTION

Plaintiff C.R., by and through his guardian ad litem Tracey Joffe, brings this disability discrimination action against Defendants PLB Management LLC, dba Park La Brea Management, LA Park La Brea A LLC, LA Park La Brea B LLC, LA Park La Brea C LLC, and Apartment Investment and Management Company ("Defendants"). (Compl., ECF No. 1.)  Plaintiff moves for a preliminary injunction requiring Defendants to assign him a specific reserved parking space and to pay for upgraded windows in his apartment, as accommodations for his disabilities. (Mot. Prelim. Inj. ("Motion" or "Mot.") 1, ECF No. 64 (filed under seal).)  For the reasons discussed below, the Court **DENIES** Plaintiff's Motion.[1]

---

[1] The Court has considered the papers filed in connection with the Motion and deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Plaintiff is a thirteen-year-old boy with physical, mental, and emotional disabilities. (Mot. 2.) Plaintiff alleges that these conditions affect his sensory processing and cognition, limit the distance he is able to safely ambulate, and increase his sensitivity to loud noise. (*Id.* at 2–3.)

Defendants own and operate the Park La Brea apartment complex in Los Angeles, California. Park La Brea has more than 4,000 units and 10,000 residents (*Id.* at 3.) Street parking in the complex is unassigned and available on a first-come, first-served basis to residents, visitors, staff, and non-residents accessing Park La Brea's facilities. (*Id.* at 3–4.) Assigned parking throughout the complex is available to residents for a rental fee. (Decl. Tracey Joffe ISO Mot. ("Joffe Decl.") ¶ 18, ECF No. 64-22; *see* Opp'n 2, ECF No. 68.)

### A. Plaintiff's Tenancy at Park La Brea

In March 2014, Joffe and Plaintiff moved into a Park La Brea apartment. (Mot. 3.) Plaintiff's unit is located at the perimeter of the complex. (Opp'n 3.) The parking space immediately in front of Plaintiff's unit is an unassigned, street parking space ("Parking Space"). (Mot. 4.) Plaintiff asserts the Parking Space is "almost always occupied," and "it is very difficult to find an available on-street parking space near" his apartment. (*Id.*) Plaintiff also asserts that construction projects near Park La Brea cause significant noise and sound intrusion into his apartment. (*Id.* at 4–5.)

In April 2018, Defendants began a planned window upgrade project for units in the complex's interior blocks. (Opp'n 3.) The project involved providing these units with double-paned windows. (*Id.*) Defendants did not plan to upgrade the windows in perimeter block units because Defendants wanted to maintain Park La Brea's historic landmark aesthetic. (*Id.*)

In late November 2019, Plaintiff requested that Defendants "prioritize" his unit for window replacement, to reduce noise as an accommodation for his disabilities. (Mot. 11.) Defendants informed Plaintiff that his unit was not scheduled for the

window upgrade. (*Id.*) In mid-December 2019, Plaintiff requested that Defendants assign the Parking Space as a handicap accessible space[2] to Plaintiff, also as an accommodation for his disabilities. (*Id.* at 8; Opp'n 5.) Defendants offered Plaintiff alternative assigned parking near his unit. (Opp'n 5.) Plaintiff did not accept. (*Id.*)

Through at least January 2021, Plaintiff continued to request that Defendants upgrade his windows and assign him the Parking Space as a handicap accessible space. (Mot. 8–13.) In response, Defendants offered alternatives including that Plaintiff could cover the cost of upgrading the windows himself, accept a reserved parking space near his unit, or move to another apartment in the complex, away from the construction and with upgraded windows and reserved parking. (*Id.*; Opp'n 4–5.) Plaintiff asserts that moving to a new unit would be too traumatic for him, and that Defendants must cover the cost of replacing the windows and assign the Parking Space to him as reasonable accommodations for his disabilities. (Mot. 1, 10.)

**B.  Department of Fair Employment and Housing Complaint**

In February 2020, Joffe filed a housing discrimination complaint against Defendants with the Department of Fair Employment and Housing ("DFEH"). (Mot. 9; Joffe Decl. ¶¶ 48, 87.) In April 2021, after DFEH conducted a lengthy investigation, Joffe withdrew the complaint. (Opp'n 4; Decl. Michael J. Chilleen ISO Opp'n ("Chilleen Decl.") ¶ 3, Ex. B ("Notice of Case Closure"), ECF No. 68-1.)

**C.  Procedural History**

On April 15, 2021, Plaintiff filed the Complaint in this action. (*See* Compl.) Plaintiff asserts three causes of action: (1) violation of the Fair Housing Act, 42 U.S.C. § 3601, (2) violation of the California Civil Code section 54.1, and (3) negligence. (*Id.* ¶¶ 34–61.) In February and March 2022, Plaintiff asked

---

[2] Plaintiff requested the Parking Space be assigned to him as a handicapped space. (*See* Opp'n 5; Joffe Decl. ¶ 47, Ex. I ("Dec. 17, 2019 Letter") at 8 (requesting an "assigned handicapped parking space"), ECF No. 64-9.) However, in this litigation, Plaintiff asks only that Defendants assign the Parking Space to him, not that they make it handicap accessible. (*See* Mot. 1 (requesting assignment of "the parking space in front of his unit"); Opp'n 6.)

3

Defendants to stipulate to a dismissal without prejudice so that Plaintiff could refile the case in state court. (Chilleen Decl. Exs. C, D (emails requesting dismissal).) Defendants did not agree. (Opp'n 7.) On April 6, 2022, the parties mediated without success. (Mediation Report, ECF No. 56.) On April 7, 2022, Plaintiff filed this Motion seeking a preliminary injunction. (*See* Mot.) The Motion is fully briefed. (*See* Opp'n; Reply, ECF No. 72 (filed under seal).)[3]

After the Court took Plaintiff's Motion under submission, Defendants moved for summary judgment. (*See* Defs. Mot. Summ. J., ECF No. 80.) That motion is also fully briefed, and the Court took it under submission after finding it suitable for resolution on the papers. (ECF No. 97.) The parties then stipulated to mediate again, resulting in a stay of the case for several months. (*See* Stip., ECF No. 103; Order Staying Action, ECF No. 104.) Mediation was again unsuccessful. (Order Lifting Stay, ECF No. 106.)

### III. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). A court may grant preliminary injunctive relief when necessary to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). A movant must establish that they are likely to succeed on the merits, irreparable harm is likely in the absence of an injunction, the balance of equities tips in their favor, and an injunction is in the public interest. *Benisek v. Lamone*, 138 S. Ct. 1942, 1943–44 (2018) (citing *Winter*, 555 U.S. at 20).

The Ninth Circuit distinguishes between "prohibitory" and "mandatory" injunctions. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d

---

[3] Defendants object to Plaintiff's evidence on numerous bases. (*See* Defs. Evid. Objs., ECF No. 68-4; Defs. Objs. Pl. Evid. Reply, ECF No. 74.) Even if the objections are proper, courts may consider evidence in ruling on an application for preliminary injunction that may otherwise be inadmissible. *See, e.g.*, *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) ("A district court may, however, consider hearsay in deciding whether to issue a preliminary injunction."). Accordingly, for the purposes of this Motion, Defendants' objections are **OVERRULED**.

873, 878–79 (9th Cir. 2009). A prohibitory injunction preserves the status quo by freezing "the positions of the parties until the court can hear the case on the merits." *Id.* at 879 (quoting *Heckler v. Lopez*, 463 U.S. 1328, 1333 (1983)). In contrast, a mandatory injunction "orders a responsible party to 'take action.'" *Id.* (quoting *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)). A party seeking a mandatory injunction bears a "doubly demanding" burden, in that they "must establish that the law and facts *clearly favor* [their] position," *Garcia*, 786 F.3d at 740, and that "extreme or very serious damage will result" absent injunctive relief, *Marlyn*, 571 F.3d at 879.

## IV. DISCUSSION

Plaintiff concedes that the injunction he seeks is mandatory, not prohibitory. (*See* Reply 7–8; Opp'n 7–8.) Plaintiff seeks an injunction that would require Defendants to "take action," *Marlyn*, 571 F.3d at 879, by assigning him the Parking Space and paying for upgraded windows. Accordingly, to obtain the injunction he seeks, Plaintiff must satisfy the heightened mandatory injunction standard. *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1161 (9th Cir. 2011) (comparing the "baseline *Winter* standard" and the "heightened" mandatory injunction standard). Notably, mandatory injunctions are "particularly disfavored," and "are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Marlyn*, 571 F.3d at 879.

### A. Windows

Plaintiff seeks an order requiring Defendants to pay for upgraded windows in his apartment. (Mot. 1.) Plaintiff asserts that he lacks the financial resources to pay for the windows. (Reply 8.) "Mere financial injury, however, will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation." *Goldie's Bookstore, Inc. v. Superior Ct.*, 739 F.2d 466, 471 (9th Cir. 1984) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). Here, the cost of the windows is easily calculable and compensable in damages should Plaintiff ultimately prevail on

the merits. Accordingly, a preliminary injunction requiring Defendants to cover the cost of upgrading Plaintiff's apartment windows is not appropriate. *Id.* at 471–72 (denying injunctive relief where plaintiff's harm "would be easily calculable and compensable in damages").

**B.    Parking**

Plaintiff also seeks an order requiring Defendants to assign him the Parking Space immediately in front of his apartment. (Mot. 1.)

"[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek*, 138 S. Ct. at 1944 (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)). A long delay before seeking injunctive relief "implies a lack of urgency and irreparable harm." *Oakland Trib., Inc. v. Chron. Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). "Where no new harm is imminent, and where no compelling reason is apparent," a court need not "issue a preliminary injunction against a practice which has continued unchallenged for several years." *Id.*

In March 2014, Plaintiff moved into the apartment. He did not express an issue with Defendants' unassigned parking policy until December 2019, more than five years later. In February 2020, Plaintiff filed his DFEH complaint. He proceeded for fourteen months with the DFEH investigation before withdrawing his complaint. In April 2021, Plaintiff initiated this action in federal court and, despite having asserted for more than a year that Defendants' parking policy was causing him serious harm, Plaintiff did not move for a preliminary injunction. Instead, Plaintiff proceeded with this litigation for nearly a year and then attempted to dismiss this case and start over again in state court. Only when Defendants refused to dismiss and mediation proved unsuccessful did Plaintiff file this Motion. Plaintiff's long delay, waiting months and years before seeking injunctive relief, undercuts Plaintiff's claimed urgency and irreparable harm. *See Garcia*, 786 F.3d at 746 (finding a delay of months undercut claim of irreparable harm); *Oakland Trib.*, 762 F.2d at 1377 (finding a delay of years implied a lack of imminent harm).

Plaintiff excuses his delay by explaining that the risk of harm Defendants' parking policy poses has increased as Plaintiff has grown in age and size. (Reply 6.) He also argues that he should not "be faulted for giving the Defendants one last opportunity" to agree to provide the requested accommodations at mediation. (*Id.* at 7.) However, none of this "change[s] the fact that [Plaintiff] could have sought a preliminary injunction much earlier." *See Benisek*, 138 S. Ct. at 1944 (finding plaintiffs' "years-long delay in asking for preliminary injunctive relief weighed against their request"). Plaintiff fails to show that any new harm is imminent or irreparable, as the parking policy has continued unchallenged for years. *See id.*

The Court finds that Plaintiff does not establish immediate and irreparable injury. Accordingly, the Court need not decide whether the law and facts clearly favor Plaintiff on the merits. *See Oakland Trib.*, 762 F.2d at 1376 ("Under any formulation of the [*Winter*] test, plaintiff must demonstrate that there exists a significant threat of irreparable injury.").

Moreover, the Court notes that, at this late stage, preliminary injunctive relief is particularly unsupported. Dispositive motions are under submission and trial is mere months away. Overall resolution of Plaintiff's claims on the merits is forthcoming.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion for a Preliminary Injunction. (ECF No. 64.)

**IT IS SO ORDERED.**

January 31, 2023

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**