O

# United States District Court
# Central District of California

| | |
|---|---|
| C.R.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PLB MANAGEMENT LLC et al.,<br><br>　　　　　Defendants. | Case № 2:21-cv-03275-ODW (JEMx)<br><br>**ORDER RE: MOTION FOR JUDGMENT AS A MATTER OF LAW, A NEW TRIAL, OR REMITTITUR [210]** |

## I.    INTRODUCTION

Plaintiff C.R., by and through his guardian ad litem Tracey Joffe, brought this disability discrimination action against Defendant PLB Management LLC.[1] A jury rendered a verdict in C.R.'s favor on his claims and awarded him $250,000 in emotional distress damages. PLB now moves for judgment as a matter of law, a new trial, or remittitur, on the grounds that no reasonable jury could have reached the verdict that the jury did here based on the evidence presented at trial. (Mot. J. ("Mot." or "Motion"), ECF No. 210.) For the reasons discussed below, the Court **GRANTS IN PART** PLB's motion for judgment as a matter of law, conditionally **GRANTS IN PART** PLB's motion for a new trial or remittitur, and **VACATES** the damages award.

---

[1] The Court dismissed all other named defendants in the order resolving PLB's motion for summary judgment. (Order Def.'s Mot. Summ. J. ("Order MSJ") 6–7, ECF No. 118.)

## II. BACKGROUND[2]

Plaintiff C.R. is Joffe's minor son and is disabled within the meaning of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and the California Disabled Persons Act ("DPA"), Cal. Civ. Code § 54 *et seq.* Joffe and C.R. live in an apartment in the Park La Brea apartment complex ("Park La Brea"), which is owned and operated by Defendant PLB. PLB offers parking at Park La Brea in two categories: "General," which includes unassigned first-come first-served spaces; and "Reserved," which includes rented assigned spaces in designated carports or garages. General and Reserved parking areas are available throughout Park La Brea.

In December 2019, Joffe sent PLB a letter requesting "an assigned handicapped parking space" for C.R. in front of C.R.'s apartment ("Requested Space"). (Decl. Michael D. Kibler ISO Mot. ("Kibler Decl.") Ex. H ("Joffe Letter 12/17/19"), ECF Nos. 210-1, 210-9.) The Requested Space was in a General parking area, so PLB offered two alternatives: first, C.R. and Joffe could move to a new unit that had all of Joffe's desired amenities, including a Reserved parking space immediately near the unit ("Move Option"); or, second, C.R. and Joffe could reserve the nearest Reserved parking space to C.R.'s current unit ("Reserved Parking Option"). (*Id.* Ex. I ("Yampolski Email"), ECF No. 210-10; Trial Tr. ("Tr.") 309–11, ECF Nos. 219–21.) C.R. declined and initiated legal action. C.R. asserted that PLB's refusal to assign him the Requested Space constitutes disability discrimination under the FHA and the DPA.

On April 11, 12, and 13, 2023, C.R. tried his claims to a jury. (*See* Mins. Trial, ECF Nos. 197–99.) At the close of C.R.'s case, PLB moved orally for judgment as a matter of law pursuant to Federal Rule of Civil Procedure ("Rule") 50(a). (Tr. 524–28.) PLB argued that C.R. had presented no evidence at trial to support causation, damages, or that his request was for an "accommodation," as opposed to a "modification." The Court reserved ruling on PLB's motion and, at the conclusion of all evidence, submitted the case to the jury.

---

[2] The background facts provided here are either stipulated or uncontested.

On April 13, 2023, the jury returned a verdict for C.R. (Verdict, ECF No. 200.) As relevant here, the jury found: (1) C.R.'s request was for an "accommodation," not a "modification"; (2) PLB did not offer reasonable alternative accommodations; and (3) PLB's failure to assign the Requested Space to C.R. caused C.R. emotional harm. (*Id.* at 1, 8–10.) The jury awarded C.R. $250,000 in emotional distress damages. (*Id.* at 12.) PLB now renews its motion for judgment as a matter of law ("JMOL") under Rule 50(b) and also moves for a new trial or remittitur pursuant to Rule 59(a). (Mot. 3; Tr. 728.) C.R. contends the verdict is sufficiently supported. (Opp'n 7, ECF No. 215.)

### III. LEGAL STANDARD

To succeed on a renewed motion for judgment as a matter of law under Rule 50(b), the moving party must: (1) have raised the issues in its pre-verdict Rule 50(a) motion; and (2) demonstrate that there is "no legally sufficient basis for a reasonable jury" to have found in the non-moving party's favor. *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001); *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1081 (9th Cir. 2009) (discussing the procedural requirement for a Rule 50(a) pre-verdict motion). When a court grants a Rule 50(b) motion for judgment as a matter of law, it must also "rule conditionally on any Rule 59 new-trial motion." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 840 n.8 (9th Cir. 2014); Fed. R. Civ. P. 50(c). A new trial under Rule 59(a) is warranted where the moving party shows that the jury's verdict was "contrary to the clear weight of the evidence." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).

### IV. RULE 50(b) MOTION—JUDGMENT AS A MATTER OF LAW

Judgment as a matter of law under Rule 50(b) is appropriate "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) ("[A] court should render judgment as

a matter of law when . . . there is no legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party on that issue." (internal quotation marks omitted)). However, "[a] jury's verdict must be upheld if it is supported by substantial evidence that is adequate to support the jury's findings, even if contrary findings are also possible." *Escriba*, 743 F.3d at 1242. "Substantial evidence" is more than a scintilla of evidence; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fisher v. City of San Jose*, 558 F.3d 1069, 1074 (9th Cir. 2009) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The court must scrutinize the entire evidentiary record, *Escriba*, 743 F.3d at 1242, but may not consider evidence that was not admitted or was found to be inadmissible, *McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1037 (9th Cir. 2003), *as amended on denial of reh'g and reh'g en banc* (June 17, 2003). The court may not make credibility determinations or weigh the evidence and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 150–51.

Here, PLB argues that no reasonable jury could have concluded, based on the evidence at trial, that (A) C.R.'s request with respect to the parking space was anything other than a request for a "modification"; (B) PLB did not offer reasonable alternative accommodations; or (C) PLB's failure to assign the Requested Space to C.R. caused him emotional harm. (Mot. 1.) PLB also contends that (D) C.R. failed to offer any evidence at trial supporting an award of damages. (*Id.*)

Preliminarily, "a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the . . . Rule 50(a) motion." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009); *see also Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (discussing dual purposes of pre-verdict motion as preserving the sufficiency of the evidence as a question of law and providing notice to the opposing party in time for them to correct any deficiencies). In its Rule 50(a) motion, PLB challenged the sufficiency of C.R.'s evidence regarding causation, damages, and

"modification" versus "accommodation." (Tr. 524–25.) C.R. responded with arguments concerning PLB's offered alternative accommodations. (Tr. 525–27.) Thus, the Court finds PLB's pre-verdict motion served the purposes of Rule 50(a) as to all issues PLB raises in its renewed motion for judgment as a matter of law. *See Freund*, 347 F.3d at 761. As such, the Court considers each of PLB's four challenged issues.

### A. Modification or Accommodation

A request for a "modification" is a request for a physical change made to the premises whose expense is borne by the tenant. 42 U.S.C. § 3604(f)(3)(A); 24 C.F.R. § 100.201; (*see* Order MSJ 9). In contrast, a request for an "accommodation" contemplates changes to the "rules, policies, practices, or services" affecting a tenant's use and enjoyment of a dwelling. 42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204; (*see* Order MSJ 9). The jury found that C.R's request for the Requested Space was not for a "modification," but was instead for an "accommodation." (Verdict 1, 8.)

PLB argues that the uncontested evidence at trial established that C.R. requested a modification, not an accommodation. (Mot. 13–16.) PLB points to correspondence Joffe sent to PLB expressly requesting "an assigned handicapped parking space for [her] son," including photos of C.R.'s DMV-issued handicap placard. (Joffe Letter 12/17/19; *see also* Kibler Decl. Exs. G ("Joffe Letter 1/22/20"), J ("Joffe Letter 2/7/20"), ECF Nos. 210-8, 210-11.) PLB also identifies correspondence from C.R's doctor, Dr. Curcio, in which Curcio wrote that C.R. would benefit from "a handicap spot for use in front of his home." (Kibler Decl. Ex. F ("Curcio Letter"), ECF No. 210-7.) Additionally, PLB submits the uncontradicted trial testimony of Harry Helman, PLB Director of Facilities, that converting a General unassigned parking space to a handicap-accessible assigned parking space would entail physical alterations and expense. (Tr. 269, 280–81.) PLB contends that, in the face of this evidence, no reasonable jury could find C.R.'s request was not for a modification. (Mot. 13–16.)

Nevertheless, the jury also heard testimony from Joffe that what she wanted was for PLB to change its parking policy and allow her to reserve the Requested Space.

(Tr. 434, 447, 507.) She testified that she requested the parking space because of its proximity to her apartment and the adjacent grass embankment, not for handicap access. (Tr. 408–09.) Also, Curcio testified that Joffe requested a letter on C.R.'s behalf so that they could park in the space closest to the unit, (Tr. 245), and that the proximity of the space was more important than its size, (Tr. 265). Moreover, the jury heard testimony from PLB's expert witness, Dr. Kambam, that he understood C.R. requested a "reserved assigned parking spot in front of the apartment where C.R. resides." (Tr. 589.)

The foregoing evidence is legally sufficient to support a reasonable mind's conclusion that C.R. did not request a "modification" requiring a physical change to the premises, but instead requested an "accommodation" requiring a change to PLB's parking policies. Considering this evidence, and drawing all reasonable inferences in the light most favorable to C.R., the Court must uphold the jury's conclusion that C.R.'s request was not for a modification. *See Tan Lam v. City of Los Banos*, 976 F.3d 986, 995–96 (9th Cir. 2020) (affirming in part denial of JMOL where evidence in the record sufficiently supported the jury's findings).

## B.     Reasonable Alternative Accommodations

The jury found that PLB "refuse[d] to make a reasonable alternative accommodation to C.R." (Verdict 9.)

PLB argues the uncontested evidence at trial established that PLB offered C.R. multiple reasonable alternative accommodations. (Mot. 16–17.) Eve Lauricella, PLB Leasing Support Manager, testified that she offered Joffe the option to move to "an apartment that had all of the features that she was requesting," including a very close Reserved parking space, or "a [R]eserved parking space in the carport" near C.R.'s unit. (Tr. 297, 309–11, 335.) PLB identifies the email Lauricella sent to Joffe describing the offered unit and including an offer of moving costs, (Kibler Decl. Ex. L ("Lauricella Email 12/23/20"), ECF No. 210-13), and the email PLB's legal advisor, Dan Yampolski, sent to Joffe about the options to move or rent a Reserved parking space, (Yampolski Email). PLB contends that, in the face of this evidence, no reasonable jury could

conclude that PLB refused to make reasonable alternative accommodations to C.R. (Mot. 16–17.)

### 1. *Move Option*

Drawing all inferences in a light most favorable to C.R., substantial evidence presented at trial supports the jury's conclusion that the Move Option was <u>not</u> a reasonable alternative accommodation.

Joffe testified that moving was not a reasonable option because it would be too traumatic to C.R. (Tr. 467–68.) She described their previous move in 2011 as "catastrophic" for him, (Tr. 421), and Curcio testified that a prior move led to C.R. undergoing a partial six-month hospitalization program, (Tr. 264). Curcio also testified that a change to C.R.'s routine or environment, including a change to where he lives, would be a stressor likely to trigger C.R.'s behaviors. (Tr. 240–41.) Although Kambam opined that C.R.'s medical records indicate that causes other than the prior move were responsible for the partial hospitalization, (Tr. 594–95), the jury could choose to credit Joffe and Curcio over Kambam, and conclude that moving was not a reasonable alternative for C.R. *See Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935, 943 (C.D. Cal. 2015) (giving deference to jury's credibility findings consistent with the verdict, particularly in light of conflicting testimony), *aff'd sub nom. Kim v. BMW Fin. Servs. NA LLC*, 702 F. App'x 561 (9th Cir. 2017).

Considering the foregoing evidence, and drawing all inferences in the light most favorable to C.R., *Reeves*, 530 U.S. at 150, the Court must uphold the jury's conclusion that the Move Option was <u>not</u> a reasonable alternative accommodation, as it is supported by "substantial evidence," *Fisher*, 558 F.3d at 1074.

### 2. *Reserved Parking Option*

In contrast, the evidence at trial relevant to the Reserved Parking Option, viewed in the light most favorable to C.R., permits only one reasonable conclusion and that conclusion is contrary to the jury's verdict. *Escriba*, 743 F.3d at 1242. PLB's offer of the Reserved Parking Option <u>was</u> a reasonable alternative accommodation.

Joffe testified that the uncertainty of never knowing where they would find parking was "one of the things that keeps [C.R.] constantly anxious, worrying," and that having a specific place to park close to home "would be a huge, huge benefit to C.R." (Tr. 418.) Lauricella testified that she sought out the closest possible Reserved parking space to C.R.'s apartment; when she learned that the closest space was reserved by another tenant, Lauricella persuaded that other tenant to vacate the space so that Lauricella could offer it to C.R. (Tr. 335.) The Reserved Parking Option would provide C.R. with a specific, reliable, and proximate parking location to his home, all things that Joffe testified would be a "huge, huge benefit" to him.

Joffe also testified that an important part of C.R.'s education is learning to manage and cope within his community. (Tr. 522.) C.R.'s doctors have regularly noted that community functioning is a priority for C.R. (Tr. 523.) To that end, Joffe organizes community outings for C.R., such as walking trips to the PLB pool, the Grove, the Farmer's Market, and a nearby fire station, among others. (Tr. 498–502.) Curcio corroborated this testimony and added that C.R. is physically capable of walking, but that motor planning and coordination are issues for him. (Tr. 245.) Curcio testified that the risks posed to C.R. by walking from his apartment to the Reserved Parking Option space are also present on any community outing. (Tr. 256–57.) Curcio stated that "there's nothing specific about any particular walk versus another" as far as the risk C.R. faces. (Tr. 257.)

Moreover, the jury heard testimony that the distance from C.R.'s unit to the Reserved Parking Option was about 200 feet, (Tr. 358–59 (Lauricella)), and that the distance from C.R.'s unit to the PLB pool was greater than or equal to that distance, (Tr. 501 (Joffe), 543 (John Burney, PLB Community Concerns Department)). C.R. regularly walks with Joffe to the PLB pool from his unit; walking to the pool involves crossing multiple streets, which C.R. is usually able to safely navigate. (Tr. 500–01 (Joffe).) In contrast, walking to the Reserved Parking Option involves traversing only a sidewalk, (Tr. 543–44 (Burney)), meaning less risk to C.R. than the walk to the pool.

Finally, uncontroverted testimony from Kambam established that C.R.'s medical records showed, during the time period at issue, that C.R. had been going out into the community, increasing his ability to self-regulate, and improving his independence. (Tr. 589.) Kambam agreed with Curcio that the walk to the Reserved Parking Option posed no greater risks or difficulties than any of C.R.'s community outings. (Tr. 592.) The foregoing consistent testimony established that C.R. is capable of walking to the Reserved Parking Option space and managing the risks posed by the walk, which are less than his other routine walking outings.

The only testimony from which a contrary inference could be drawn is Joffe's, that she believes the walk from the apartment to the Reserved Parking Option is "a really long way for C.R.," and "very difficult for him to do." (Tr. 416.) To reach the verdict it did, that the Reserved Parking Option was not a reasonable alternative to the Requested Space, the jury would have had to disregard all of the foregoing evidence, including Joffe's uncontradicted testimony that C.R. routinely and safely walks further, more complicated distances, and credit Joffe's singular opinion that the shorter walk to the Reserved Parking Option space was too far and too difficult. Joffe's inconsistent testimony, standing alone, amounts to only a scintilla of evidence, and falls short of the substantial evidence necessary for a reasonable jury to reach the verdict here. *See Lakeside-Scott v. Multnomah County*, 556 F.3d 797, 802 (9th Cir. 2009) ("[A] reasonable inference cannot be supported by only threadbare conclusory statements . . . ." (internal quotation marks omitted)).

In sum, ample consistent testimony established that C.R. is capable of walking to community outings that are a further distance and pose greater risks than that to the Reserved Parking Option. Also, uncontradicted testimony established that C.R.'s medical records reflected his independence and self-regulation were improving. Finally, Joffe testified that having a specific, reliable parking space close to home would be a "huge, huge benefit" to C.R. because it would alleviate his anxiety concerning where they would park. Construing all of this evidence together and in the light most

favorable to C.R. "permits only one reasonable conclusion," *Escriba*, 743 F.3d at 1242, that PLB's offer of the Reserved Parking Option <u>was</u> a reasonable alternative accommodation. Accordingly, judgment as a matter of law is appropriate on this issue.

**C. Causation**

The jury found that C.R. "suffer[ed] emotional harm because of PLB's refusal to make the accommodation that C.R. requested." (Verdict 10.) PLB argues that C.R. offered no evidence at trial that PLB caused C.R. any emotional harm. (Mot. 5–10.) Drawing all reasonable inferences in a light most favorable to C.R., the trial record lacks sufficient evidence to support the jury's verdict on the issue of causation.

In pretrial argument concerning evidence of C.R.'s emotional harm and causation, C.R.'s counsel, Mr. Matthews ("Counsel"), indicated to the Court that Curcio would testify about how PLB's conduct had harmed C.R. (Tr. 32–33.) However, Curcio did not make that essential connection. (*See generally* Tr. 230–65.) Instead, he testified to the contrary, that he was <u>not</u> aware of "any specific injury" or "any harm" that C.R. has suffered from not having the assigned Requested Space. (Tr. 259.) Furthermore, Curcio had never observed C.R.'s reaction to having to walk to further parking spaces. (Tr. 258.) In the end, Curcio did not offer any testimony from which an inference could be drawn that C.R. suffered any emotional harm *as a result* of PLB not assigning him the Requested Space.

Moreover, Kambam offered uncontradicted testimony that he reviewed hundreds of pages of C.R.'s medical records and found no mention of parking or parking issues, other than Joffe's requests for doctors' letters. (Tr. 590–91.) Thus, C.R.'s medical records also do not support an inference of causation.

During the same pretrial argument, Counsel also indicated that he intended to offer Joffe's testimony on how parking affected C.R. emotionally. (Tr. 31–32.) The Court held that Joffe's testimony on the issue would be inadmissible, as not sufficiently reliable. (Tr. 31:11–32:8 (Court: "Tell me on what basis I would permit [Joffe] to testify regarding [C.R.'s] feelings . . . [I]t's a matter of admissibility, and it's whether or not

it's sufficiently reliable."). Later, the Court repeatedly sustained objections to Counsel's questions to Joffe concerning C.R.'s emotional state in relation to parking. (*See, e.g.*, Tr. 451 (Court: "You know what you're doing . . . . [Joffe] would have no way of making that connection.").) Thus, Joffe's testimony as to how parking affected C.R. emotionally may not be considered here. *McEuin*, 328 F.3d at 1037 (stating that evidence not admitted at trial may not be considered on a JMOL motion). C.R. points to Joffe's observations of C.R.'s *behavior* when his anxiety is triggered as evidence the jury could have considered in reaching its verdict. (Opp'n 22 (citing Tr. 419).) Yet, in this testimony, Joffe did not connect (1) her observations of C.R.'s behaviors to (2) those behaviors being *caused by* the lack of the Requested Space. (*See* Tr. 419 (Joffe testifying that C.R. ducks his head, shakes, screams, and thrashes when triggered).)

Moreover, Joffe testified that many things may trigger C.R.'s anxiety and dysregulation and there is no way to predict what may be a trigger. (Tr. 412 (Q: "Is there any way to predict when he will become dysregulated?" Joffe: "No. I mean, obviously, I know that certain kinds of sounds are much more, um, distressing to him than others. But actually, no, because it's -- I really can't necessarily predict it.").) Curcio corroborated this unpredictability when he testified that "it was a little hard to know" and "hard to predict exactly" what sort of stressors might trigger C.R.'s dysregulation. (Tr. 237.) Thus, even accepting Joffe's observations of C.R.'s behavior as indicative of his emotional distress, her corroborated testimony established that what causes C.R.'s behaviors is unpredictable. That PLB's failure to assign the Requested Space to C.R. "could possibly have been the cause is not sufficient" to establish causation. *Wolf v. Reynolds Elec. & Eng'g Co.*, 304 F.2d 646, 649 (9th Cir. 1962).

Construing the evidence in the light most favorable to C.R. permits only one reasonable conclusion: the record lacks any legally sufficient evidence that could support the jury's verdict that PLB caused C.R. any harm. Thus, judgment as a matter of law is appropriate. *Cf. Tan Lam*, 976 F.3d at 1004 (reversing denial of JMOL where "there was no evidence" and "insufficient facts in the record" to support the verdict).

### D. Damages

"Generally, a jury's award of damages is entitled to great deference, and should be upheld unless it is 'clearly not supported by the evidence' or 'only based on speculation or guesswork.'" *In re First All. Mortg. Co.*, 471 F.3d 977, 1001 (9th Cir. 2006) (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986)); (*see also* Jury Instrs. 26 ("Your award must be based on evidence and not upon speculation, guesswork or conjecture."), ECF No. 206). Damages for emotional distress may be established by testimony or inferred from the circumstances. *Johnson v. Hale*, 13 F.3d 1351, 1352 (9th Cir. 1994).

The jury awarded C.R. $250,000 in emotional distress damages. (Verdict 12.) PLB argues that C.R. offered no evidence at trial that could support the jury's damages award and that C.R.'s counsel improperly urged the jury to "pick a number" that would punish PLB. (Mot. 10–13.) Drawing all reasonable inferences in a light most favorable to C.R., the trial record lacks sufficient evidence to support the jury's damages award.

In pretrial arguments, the Court emphasized to counsel that the jury would not be permitted "to speculate on the damages," and C.R. would "have to give them something concrete" from which they could "quantify" C.R.'s emotional distress. (Tr. 30.) Counsel indicated Curcio would provide this testimony. (Tr. 33–34.) However, as noted above, Curcio offered no testimony that C.R. suffered emotional harm from the parking issue and, what is more, he offered no testimony from which the jury could have quantified such harm, had it been established. (*See generally* Tr. 231–65.)

In an effort to explain the jury's damages award, C.R. theorizes in the opposition that the jury must have taken Counsel's suggestion to "pick a number for just one day" and "multiply it," (Tr. 690), by the "approximately 1,300 days" during which C.R. was denied the Requested Space, (Opp'n 27). C.R. then divides the jury's award of $250,000 by 1,300 days and concludes that the resulting figure, "approximately $200 per day . . . is not an outrageous amount of money." (*Id.*) Setting aside the impropriety of Counsel's suggestion to the jury to "pick a number," (Tr. 690), C.R.'s proposed

inference amounts to pure speculation, *see Lakeside-Scott*, 556 F.3d at 808 (finding an inference that is not based on evidence amounts to pure speculation). Just because we can reverse-engineer a "per-day" figure from the total award does mean that evidence exists to support it.[3]

Significantly, the Court's independent review of the trial record reveals no evidence—none—related to quantifying a damages award. The trial record is utterly devoid of any evidence from which a jury could have calculated a damages figure. Consequently, the verdict cannot possibly be based on a proper consideration of the evidence. *See In re First All. Mortg.*, 471 F.3d at 1001 (affirming JMOL where "the jury award was not based on proper consideration of the evidence").

Finally, Counsel improperly urged the jury to just "pick a number" that would "hold [PLB] accountable." (Tr. 689–90.) Specifically, he said, "I'm not going to tell you to award damages. I'm telling you to find a way to hold them accountable. . . . Hold them accountable. Think about the consequences if they get away with it." (Tr. 690–91.) As Counsel was well aware, punitive damages were not on the table. Prior to closing arguments, the Court conferred with counsel to finalize the jury instructions based on the evidence and issues presented at trial. (Tr. 615–26.) The Court noted that C.R. had conducted no discovery regarding punitive damages and offered no punitive damages evidence at trial. (Tr. 624–25.) Consequently, the Court did not instruct the jury on punitive damages and removed punitive damages from the verdict form. (Tr. 625.) Counsel did not object, and agreed that C.R. was submitting only emotional distress damages to the jury. (Tr. 625:10.) Nevertheless, during his closing argument, Counsel urged the jury to "hold [PLB] accountable." (Tr. 691.) Counsel's flagrant and improper argument to the jury to punish PLB monetarily was prejudicial and inexcusable.

---

[3] Further demonstrating the improbability of C.R.'s proposal, $250,000 divided by 1,300 is actually $192.307692307692 . . . . The likelihood of the jury picking this figure as a daily award is nil—just like the evidence in the record to support this damages figure.

In light of the complete absence of evidence supporting an award of emotional distress damages, and compounded by Counsel's improper argument to the jury to "pick a number" that would hold PLB "accountable," the Court finds the only reasonable conclusion is that the jury based its damages award on either speculation or a desire to punish PLB. Neither is sustainable. *See Lakeside-Scott*, 556 F.3d at 803 ("JMOL is appropriate when the jury could have relied only on speculation to reach its verdict."); *cf. Tan Lam*, 976 F.3d at 1004 (reversing denial of JMOL where "the record [wa]s devoid of" evidence to support the verdict).

There is no legally sufficient evidentiary basis in the record for a reasonable jury to award C.R. $250,000 in emotional distress damages. Accordingly, the Court finds it appropriate to grant judgment as a matter of law to PLB on this issue.

### E. Conclusion—Rule 50(b) Motion

The Court **GRANTS** judgment as a matter of law in favor of PLB as to the jury's verdict on the Reserved Parking Option, causation, and the damages award. The Court **DENIES** PLB's motion for judgment as a matter of law as to the jury's verdict that C.R's request was not for a modification and that the Move Option was not a reasonable alternative accommodation.

### V. RULE 59(a) MOTION—NEW TRIAL OR REMITTITUR

PLB moves alternatively for a new trial or remittitur, based on the same four issues raised above. (Mot. 3.) If a court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any new trial motion "by determining whether a new trial should be granted if the judgment is later vacated or reversed." Fed. R. Civ. R. 50(c)(1); *Experience Hendrix*, 762 F.3d at 840 n.8. A court must state the grounds for its conditional ruling. Fed. R. Civ. P. 50(c)(1).

Rule 59(a) governs motions for a new trial. Under Rule 59(a), a court may grant a new trial "on all or part of the issues, 'for any reason for which a new trial has heretofore been granted in an action at law in federal court.'" *Kim*, 142 F. Supp. 3d at 946 (quoting Fed. R. Civ. P. 59(a)). This includes a verdict that is "contrary to the

clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001).

Unlike a Rule 50(b) motion, on a motion for a new trial "[t]he district court can weigh the evidence and assess the credibility of the witnesses," and need not "view the trial evidence in the light most favorable to the verdict." *Experience Hendrix*, 762 F.3d at 842. Still, "a district court may not grant a new trial simply because it would have arrived at a different verdict." *Silver Sage*, 251 F.3d at 819. Ultimately, "[t]he grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.'" *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)).

A.  **Modification or Accommodation**

As explained above, a "modification" entails a physical change to the premises, while an "accommodation" entails a change to rules or policies. *See infra* Section IV.A. The Court finds the jury's verdict that C.R.'s request was not for a modification is against the clear weight of credible evidence, warranting a new trial.

Joffe sent multiple letters to PLB, each expressly seeking "an assigned handicapped parking space" for C.R. The letters were accompanied by either C.R.'s DMV handicap placard or a doctor's note supporting the request for an assigned handicap parking space in front of C.R.'s unit. Helman's uncontradicted testimony established that creating an assigned handicapped parking space would require physical alteration. Thus, Joffe's letters expressly and repeatedly requested a physical alteration to the premises, i.e., a "modification." 42 U.S.C. § 3604(f)(3)(A); 24 C.F.R. § 100.201.

Joffe's contrary testimony years later, that what she actually meant by her correspondence was to request an *accommodation* for PLB to assign C.R. the General parking space in front of the unit, is simply not credible. Joffe offered substantial testimony concerning her background, education, and experience. (Tr. 399–403.) She holds multiple degrees in biological anthropology and epidemiology, including a

Bachelor's degree, a Master of Science degree, a Ph. D, and an additional post doctorate degree. (Tr. 400–01.) The Court simply cannot credit that an individual of Joffe's intelligence, education, and experience did not understand the written request she made repeatedly over a period of years.

As the verdict that Joffe's request was not a modification is "contrary to the clear weight of the evidence, or is based upon evidence which is false," *Silver Sage*, 251 F.3d at 819, the Court conditionally **GRANTS** PLB's motion for a new trial on this issue.

### B. Reasonable Alternative Accommodations

The Court finds the verdict that PLB failed to offer reasonable alternative accommodations is in part supported by the evidence with respect to the Move Option, but is against the clear weight of evidence with respect to the Reserved Parking Option.

For the reasons stated above, *see infra* Section IV.B.1., the Court finds the verdict that the Move Option was not a reasonable alternative accommodation is <u>not</u> against the clear weight of credible evidence. The Court therefore conditionally **DENIES** PLB's motion for a new trial on this issue.

However, for reasons similar to those stated above, *see infra* Section IV.B.2., the Court finds the verdict that the Reserved Parking Option was not a reasonable alternative accommodation is against the weight of credible evidence. Joffe testified that it is of paramount importance for C.R. to learn to function, manage, and cope in his community. He regularly goes on outings in which he walks greater distances and traverses more complex pedestrian terrain than that required by the Reserved Parking Option. Curcio and Kambam both testified that C.R. is capable of walking to the Reserved Parking Option space and managing the attendant risks, which are no greater risk to C.R. than his other regular outings. Joffe's testimony to the contrary, in the face of her other substantial testimony concerning C.R.'s developing skills, training, and many routine outings, is both insubstantial and less credible. Accordingly, the Court conditionally **GRANTS** PLB's motion for a new trial on this issue.

### C. Causation

For reasons similar to those stated above, *see infra* Section IV.C., the Court finds the verdict that PLB caused C.R. emotional harm by failing to assign him the Requested Space is against the clear weight of evidence. C.R. introduced no evidence that PLB caused C.R. emotional harm. Moreover, contrary to a finding of causation, Joffe and Curcio both testified without contradiction that it is difficult to predict what may trigger C.R.'s anxiety and behaviors. Thus, the finding that PLB caused C.R. emotional harm is against the clear weight of evidence, i.e., none. In addition, the Court finds Kambam's expert opinion, that C.R.'s independence and ability to self-regulate actually improved during the time period at issue, credible and entitled to consideration.[4] This further undermines the finding that PLB caused C.R. any harm. Accordingly, the Court conditionally **GRANTS** PLB's motion for a new trial on the issue of causation.

### D. Damages

For reasons similar to those stated above, *see infra* Section IV.D., the Court finds the verdict awarding C.R. $250,000 in emotional distress damages is contrary to the clear weight of the evidence, a miscarriage of justice, and legally erroneous.

C.R. offered no evidence related to quantifying a damages award. The Court's independent review of the trial record reveals a complete absence of any evidence from which the jury could have calculated a damages figure. Thus, the verdict's award is against the weight of evidence, i.e., none. Moreover, an award of $250,000 in emotional distress damages, absent any evidence supporting causation or harm, is a miscarriage of justice, in that the award can only be based on speculation, error, and disregard of the Court's instructions. *See Experience Hendrix*, 762 F.3d at 846 (affirming grant of new trial to prevent a miscarriage of justice where the damages awards were "against the clear weight of the evidence and the product of speculation, error, and disregard of the Court's instructions").

---

[4] Although the Court disregarded Kambam's expert opinion on this point on PLB's Rule 50(b) motion, as it is evidence favoring PLB that the jury was not required to believe, *see Reeves*, 530 U.S. at 150, the Court may consider it on Rule 59(a) motion for a new trial, *Experience Hendrix*, 762 F.3d at 842.

Finally, although the Court clearly instructed the jury that it was not to include any damages to "punish or make an example of PLB," (Jury Instrs. 26), Counsel's inflammatory closing argument urged the jury to "pick a number" that would hold PLB "accountable to such an extent that they will feel it enough to know that they can never do this again to another disabled person." (Tr. 690–91.) An award such as he urged can only be understood as intended to "punish or make an example." (Jury Instrs. 26.) As punitive damages were not available to C.R. or submitted to the jury, to the extent the jury took Counsel up on his proposition and awarded damages to "hold [PLB] accountable," the award is also legally erroneous. *See Davis v. Progressive Cas. Ins. Co.*, 220 F. App'x 708, 711 (9th Cir. 2007) (affirming JMOL on punitive damages where plaintiff presented no evidence supporting them, and further finding it would have been legal error to submit the question of punitive damages to the jury); *cf. Mink v. Polaris Indus. Inc.*, 546 F.3d 1364, 1371 (Fed. Cir. 2008) (discussing that a court may grant remittitur without offering a party the option of a new trial when a jury award is premised on a legal error such as where the judgment is for an amount not permitted by law).

Accordingly, the Court conditionally **GRANTS** PLB's motion for a new trial on the issue of damages.

**E.     Conclusion—Rule 59(a) Motion**

The Court conditionally **GRANTS** PLB's Rule 59(a) motion for a new trial as to the jury's verdict that C.R.'s request was not for a modification, that the Reserved Parking Option was not a reasonable alternative accommodation, causation, and the damages award. The Court conditionally **DENIES** PLB's Rule 59(a) motion as to the jury's verdict that the Move Option was not a reasonable alternative accommodation.

### VI.     CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Defendant's Motion for Judgment as a Matter of Law and **CONDITIONALLY GRANTS IN PART** Defendant's Motion for a New Trial or Remittitur. (ECF No. 210.)

The damages award is **VACATED**. The Court will issue a Judgment consistent with this Order.

**IT IS SO ORDERED.**

June 7, 2023

_____
                        **OTIS D. WRIGHT, II
                        UNITED STATES DISTRICT JUDGE**